BRYCE W. TALBOT, AZ Bar No. 035756
  btalbot@foley.com
**FOLEY & LARDNER LLP**
95 SOUTH STATE STREET, SUITE 2500
SALT LAKE CITY, UT 84111-1760
TELEPHONE:  801.401.8900
FACSIMILE:   385.799.7576

EILEEN R. RIDLEY, CA Bar No. 151735 (*pro hac vice* application forthcoming)
  eridley@foley.com
EMMA E. SOLDON, CA Bar No. 345323 (*pro hac vice* application forthcoming)
  esoldon@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

Attorneys for Plaintiff FBC
MORTGAGE, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| FBC MORTGAGE, LLC, a Florida limited liability company,<br><br>                  Plaintiff,<br><br>    vs.<br><br>NEW AMERICAN FUNDING, LLC, a Delaware limited liability company; BROKER SOLUTIONS, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>                  Defendant. | Case No.<br><br>**PLAINTIFF FBC MORTGAGE, LLC'S COMPLAINT FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ., VIOLATION OF THE ARIZONA UNIFORM TRADE SECRETS ACT, A.R.S. § 44-401, ET SEQ., VIOLATION OF A.R.S. § 44-1521, ET SEQ., CIVIL CONSPIRACY**<br><br>**JURY TRIAL DEMANDED** |

FBC MORTGAGE, LLC'S COMPLAINT
Case No. _____

**COMPLAINT**

1.      Plaintiff FBC Mortgage, LLC ("FBC" or "Plaintiff") makes the following allegations against Defendants New American Funding, LLC and Broker Solutions, Inc. (collectively, "NAF" or "Defendant").

**PARTIES**

2.      FBC is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 189 South Orange Avenue, Suite 970, Orlando, FL 32801.  FBC has a branch office located at 16430 N. Scottdale Rd, Unit 210, Scottsdale, AZ 85254.

3.      New American Funding, LLC ("NAF") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 14511 Myford Road, Suite 100, Tustin, CA 92780.  NAF has several offices in Arizona including 15880 North Greenway Hayden Loop, Suite 100, Scottsdale, AZ 85260.

4.      Broker Solutions, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 14511 Myford Road, Suite 100, Tustin, CA 92780, and with its known place of business located at 8825 N 23rd Ave, Suite 100, Phoenix, AZ, 85021.

5.      On information and belief, New American Funding, LLC acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of Broker Solutions, Inc., and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.  Each of New American Funding, LLC's acts was done with the permission and consent of Broker Solutions, Inc.

6.      On information and belief, Broker Solutions, Inc. acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of New American Funding, LLC, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture.  Each of Broker Solutions, Inc.'s acts was done with the permission and consent of New American Funding, LLC.

7.     FBC is ignorant of the true names and capacities of potential additional defendants but believes additional parties may be discovered during this action.  On information and belief, FBC alleges that these unnamed defendants are responsible in some manner as alleged herein or are otherwise responsible for, participated in, or contributed to the matters of which FBC complains, and have legal responsibility as a result.  FBC will amend this Complaint to add such defendants as parties to the action upon learning of their identity and the relevant facts associated with their potential liability.

## JURISDICTION AND VENUE

8.     FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

9.     This Court has original jurisdiction pursuant to 28 § U.S.C. 1331 because this action alleges violations the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

10.     This Court has personal jurisdiction over NAF based on NAF's transaction of business within the state of Arizona; NAF's tortious acts committed in Arizona, including NAF's tortious interference with FBC's contracts and business relations, and NAF's purposeful choice to transact business in Arizona by regularly and systematically promoting and selling mortgage loans to various clients in Arizona and developing preferred lending relationships with home builders in Arizona—including the loans and home builders that are the subject of this lawsuit—through email, mail, phone calls, employee travel, and regular solicitation of business in Arizona.  Based on the foregoing, NAF has certain minimum contacts with Arizona such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District. Among other acts, NAF acquired, copied, used, and disclosed FBC's confidential information, proprietary information, and trade secrets in this District.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

# BACKGROUND FACTS

12.     FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

13.     FBC is a mortgage lending company that provides mortgage loans to clients across the country.

14.     NAF is a competitor to FBC.

15.     In the mortgage lending industry, mortgage lending companies like FBC seek to develop preferred lending relationships with "home builders" or "house accounts."  FBC invests substantial time, effort, and money into understanding each builder's business needs, fostering a preferred lender relationship, and retaining those relationships once they are established.   These relationships provide FBC with a superior visibility among the builder's network of homebuyers, a steady stream of qualified leads, decreased transaction costs, and a smoother and faster loan origination process, all of which lead to increased loan volume.

16.     NAF has engaged in a concerted campaign to tortiously interfere with FBC's contractual and business relations by identifying which home builders and house accounts FBC has developed and seeking to interfere with those relationships by unlawfully [a] soliciting FBC's employees to leave FBC and join NAF; [b] targeting FBC's long-standing relationships with its home builders and house accounts (frequently when NAF has had no prior relationship with those entities); and [c] acquiring, using and disclosing FBC's trade secrets (including pricing strategies and business generation methods) obtained from those former employees in order to improperly solicit FBC's employees, clients and preferred lending relationships with home builders all to the detriment and damage of FBC (herein "NAF's Scheme").

17.     On information and belief, NAF is acting with a pattern and practice to interfere with FBC's client relationships, employee relationships and contracts, and builder relationships and house accounts in multiple jurisdictions, including California, Georgia, and Arizona.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

18.     NAF's Scheme consists of improperly and illegally soliciting and inducing groups of FBC's employees to breach their contracts with FBC and terminate their contractual relationships with FBC. NAF solicited an entire branch of FBC employees in California, and NAF is now beginning this same pattern in Georgia and Arizona, where NAF has targeted its Scheme towards several of FBC's employees. NAF's Scheme also involves targeting key accounts at FBC—frequently involving home builders with whom NAF has no prior relationship—and the key employees associated with those accounts at FBC. NAF induces the employees to leave FBC and join NAF in violation of their contractual and legal obligations to FBC with the plan to use the confidential information learned at FBC (including trading on business relationships developed and invested in by FBC and using FBC designed pricing and marketing strategies) in an effort to illegally take those FBC relationships and business practices to NAF. In doing so, NAF seeks to improperly obtain business that it never had and never would have had without the misappropriation of FBC's trade secrets and employees, clients, and builder relationships that FBC invested substantial time and money into developing and protecting.

19.     NAF enacted its Scheme in California around November 2022. NAF then continued its scheme in Georgia in September 2023 and in Arizona in November 2023. NAF's pattern and practice represents a continuing threat of unlawful activity (or alternatively, lawful activity committed for an unlawful purpose) and a continuing threat of irreparable harm to FBC's business. FBC has already lost goodwill, unique client relationships, and trade secrets, and FBC will continue to suffer immediate, irreparable, and incalculable injury, unless NAF is enjoined. FBC has no adequate remedy at law.

20.     NAF has improperly solicited and induced FBC's clients to terminate and/or reduce their business relationships with FBC—clients with whom FBC had longstanding relationships and has invested significant time, expense and effort developing with an expectation that those relationships wound continue (and with whom NAF had no prior relationship).

21.     NAF has improperly solicited and induced builders with whom FBC had a preferred lending relationship to terminate or reduce their business relationships with FBC—builders with whom FBC had longstanding relationships and has invested significant time, expense, and effort developing with  an expectation that those relationships wound continue (and with whom NAF had no prior relationship).

22.     FBC has had to expend substantial resources to investigate and remediate the significant damages caused by NAF's improper conduct, including filing litigation in the Northern District of California and now in this Court.

23.     Margaret Livingston ("Livingston") is an individual who is a resident of Chandler, Arizona and was formerly employed as a Mortgage Loan Originator for FBC. In that role, Livingston was privy to FBC's confidential information related to business strategies, clients, home builders, key FBC employees and all aspects of the mortgage lending process.

24.     Jon Mount ("Mount") is an individual who is a resident of Castle Rock, Colorado and was formerly employed as a Sales Manager/Loan Originator for FBC. Mount was privy to FBC's confidential information related to business strategies, clients, home builders, key FBC employees and all aspects of the mortgage lending process.

25.     On information and belief, both Livingston and Mount have participated in NAF's improper scheme by accepting employment with NAF in violation of their non-competition covenant to FBC, and improperly acquiring, using, and disclosing FBC's trade secrets and confidential information to assist NAF in soliciting FBC's clients, employees and preferred lending relationships with home builders, in violation of their non-disclosure, non-solicitation, computer access, and non-disparagement covenants to FBC.

26.     Rosa Gamboa ("Gamboa") is an individual who is a resident of Phoenix, Arizona and was formerly employed as a Loan Processor for FBC.  Gamboa was a key team member specifically working with Livingston while at FBC and serving FBC's builder and house accounts in Arizona.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

27.     Jonathan Pennington ("Pennington") is an individual who is a resident of Phoenix, Arizona and was formerly employed as a Production Assistant for FBC. Pennington was also a key team member with Mount, Livingston, and Gamboa in servicing FBC's builder and house accounts in Arizona.

28.     On information and belief, and as part of NAF's Scheme, Livingston, Mount, Gamboa and Pennington (collectively the "Former FBC Employees") are using the confidential and trade secret information and relationships developed at FBC for the benefit of NAF as part of NAF's Scheme, including FBC's client lists, builder lists, information regarding preferred lending relationships with builders, and pricing methodologies and business practices.   As a result, the Former FBC Employees are individually and collectively with NAF soliciting FBC's clients, employees and builder accounts and undercutting FBC from a pricing standpoint.

29.     Prior to the filing of this action, FBC formally notified NAF and the Former FBC Employees to cease and desist from implementing the NAF Scheme.  NAF has failed to cease its tortious and illegal conduct or cure its violations of the law, resulting in damages to FBC.

30.     To this day, FBC continues to suffer damages, as well as irreparable harm and incalculable injury, as a direct and proximate result of NAF's conduct. FBC has no adequate remedy at law.

## COUNT ONE

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**

31.     FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

**FBC's Contractual Relationships**

32.     FBC had existing contractual relationships and rights with the Former FBC Employees (among others).

33.     On May 20, 2019, FBC and Livingston entered into an Employment Agreement, and on August 7, 2019, FBC and Livingston entered into a House Addendum

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

to the Employment Agreement regarding Woodside Homes, and on January 6, 2021, FBC and Livingston entered into a House Addendum to the Employment Agreement regarding The New Home Company.

34.     Between August 26, 2019, and September 1, 2022, FBC and Livingston entered into various Compensation Plans that provided Livingston with commission on "monthly funded company generated production," where "company generated production" includes Woodside Homes and The New Home Company.  These Compensation Plans imposed "duties" on Livingston "includ[ing], but not limited to, the following items . . . iii. Offer only FBC products and programs . . . ix. [Livingston] may not assist any other entity or individual with the performance of lending related activities during [Livingston]'s employment with FBC."

35.     Livingston's Employment Agreement, House Addenda, and Compensation Plans are collectively referred to herein as "Livingston's Employment Agreement."

36.     Livingston's Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference.

37.     Given the terms of Livingston's Employment Agreements and the manner by which House Accounts were handled internally at FBC, Livingston was aware that both the Woodside Homes and The New Home Company Accounts were sensitive and proprietary in nature and were accounts which FBC devoted significant financial and time investment.

38.     On December 3, 2018, FBC and Mount entered into an Employment Agreement, and on May 1, 2019, FBC and Mount entered into a House Addendum to the Employment Agreement regarding Woodside Homes.

39.     Between May 1, 2019, and September 1, 2022, FBC and Mount entered into various Compensation Plans that provided Mount with commission on "monthly funded company generated production," where "company generated production" includes Woodside Homes and The New Home Company.  These Compensation Plans imposed

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

"duties" on Mount, "includ[ing], but not limited to, the following items . . . iii. Offer only FBC products and programs . . . ix. [Mount] may not assist any other entity or individual with the performance of lending related activities during [Mount]'s employment with FBC."

40.     Mount's Employment Agreement, House Addendum, and Compensation Plans are collectively referred to herein as "Mount's Employment Agreement."

41.     Mount's Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit B, and which is made a part hereof and incorporated herein by reference.

42.     Given the terms of Mount's Employment Agreements and the manner by which House Accounts were handled internally at FBC, Mount was aware that both the Woodside Homes and The New Home Company Accounts were sensitive and proprietary in nature and were accounts which FBC devoted significant financial and time investment.

43.     On January 24, 2019, FBC and Gamboa entered into an Employment Agreement ("Gamboa's Employment Agreement").  Gamboa's Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit C, and which is made a part hereof and incorporated herein by reference.

44.     On September 18, 2019, FBC and Pennington entered into an Employment Agreement ("Pennington's Employment Agreement").    Pennington's Employment Agreement is a valid, enforceable, and binding written contract, a copy of which is attached hereto as Exhibit D, and which is made a part hereof and incorporated herein by reference.

45.     In consideration of Livingston's execution of Livingston's Employment Agreement, FBC provided Livingston with paid employment.  In consideration of FBC's execution of Livingston's Employment Agreement, Livingston accepted employment with FBC and gained access to and knowledge of FBC's confidential information and trade secrets.

46.     In consideration of Livingston's execution of the House Addenda and Compensation Plans, FBC provided Livingston with continued employment.  In

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

consideration of FBC's execution of the House Addenda and Compensation Plans, Livingston accepted continued employment with FBC and gained additional access to and knowledge of FBC's confidential information and trade secrets.  The House Addendum also provided Livingston with specific compensation levels due to the steady volume of loans and improved competitive pricing resulting from FBC's builder relationship with Woodside Homes and The New Home Company.

47.     In consideration of Mount's execution of Mount's Employment Agreement, FBC provided Mount with paid employment.  In consideration of FBC's execution of Mount's Employment Agreement, Mount accepted employment with FBC and gained access to and knowledge of FBC's confidential information and trade secrets.

48.     In consideration of Mount's execution of the House Addenda and Compensation Plans, FBC provided Mount with continued employment.  In consideration of FBC's execution of the House Addenda and Compensation Plans, Mount accepted continued employment with FBC and gained additional access to and knowledge of FBC's confidential information and trade secrets.  The House Addendum also provided Mount with specific compensation levels due to the steady volume of loans and improved competitive pricing resulting from FBC's builder relationship with Woodside Homes and The New Home Company.

49.     In consideration of Gamboa's execution of Gamboa's Employment Agreement, FBC provided Gamboa with paid employment.  In consideration of FBC's execution of Gamboa's Employment Agreement, Gamboa accepted employment with FBC and gained access to and knowledge of FBC's confidential information and trade secrets.

50.     In consideration of Pennington's execution of Pennington's Employment Agreement, FBC provided Pennington with paid employment.  In consideration of FBC's execution of Pennington's Employment Agreement, Pennington accepted employment with FBC and gained access to and knowledge of FBC's confidential information and trade secrets.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

51.     The Former FBC Employees' respective Employment Agreements, including Livingston's and Mount's House Addenda and Compensation Plans, are referred to herein as "<u>the Employment Agreements</u>."

52.     The terms of the Employment Agreements are sufficiently specified.  The agreements describe, among other things, the Former FBC Employees' position and duties, the at-will nature of employment, compensation, benefits, insurance, vacation, notice requirements, remedies, indemnification, and various covenants.

53.     FBC fully performed its obligations under the Employment Agreements, and all conditions precedent to the Employment Agreements have been satisfied.

**NAF's Knowledge of the Contracts**

54.     NAF had knowledge of the Employment Agreements between FBC and the FBC Former Employees, respectively.  At all relevant times, NAF was aware that the FBC Former Employees terminated their employment with FBC in order to begin employment with NAF with a specific aim to implement the NAF Scheme.

55.     FBC sent NAF several demand letters in late 2022 regarding the content of its Employment Agreements with its employees, NAF's improper interference with those contractual relationships, and NAF's improper solicitation of FBC's employees.  Since at least late 2022, NAF has been fully aware of the contents of FBC's Employment Agreements with its employees.

56.     By virtue of FBC's prior litigation with NAF in the Northern District of California, NAF also became aware of FBC's House Addenda with employees like Livingston and Mount.

57.     FBC also provided actual notice to NAF of its contractual relationships with the Former FBC Employees in several demand letters sent on October 3, 2023 and November 13, 2023.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

**NAF's Intentional Interference: Non-Disclosure Obligations**

58.    "Confidential Information, Trade Secrets, and Proprietary Information" is defined in Section 12 of the Employment Agreements, and that definition is hereby incorporated by reference as if fully set forth herein.  (*See* Exs. A–D, § 12.)

59.    As employees of FBC, the Former FBC Employees had access to FBC's Confidential Information, Trade Secrets, and Proprietary Information.  The Former FBC Employees expressly agreed that, "[w]hile employed by FBC, [the Former FBC Employees] will have access to and become acquainted with Confidential Information, Trade Secrets, and Proprietary Information."  (*See* Exs. A–D, § 12.)

60.    FBC's Confidential Information, Trade Secrets, and Proprietary Information are not commonly known to the public.  FBC considers its Confidential Information, Trade Secrets, and Proprietary Information to be highly confidential and protected by both federal and state regulations.  FBC prohibits disclosure of its Confidential Information, Trade Secrets, and Proprietary Information to third parties and only allows its Confidential Information, Trade Secrets, and Proprietary Information to be used for narrowly-prescribed purposes in furtherance of its business.

61.    FBC's Confidential Information, Trade Secrets, and Proprietary Information derive independent economic value from secrecy because disclosure of the "identities of, individual requirements of, specific contractual arrangements with, FBC's clients, customers, vendors and other trade related business relations and their confidential information" would allow a competitor to undercut FBC by directing its sales efforts to FBC's current and potential borrowers who are already using or who are considering using FBC's loan services.

62.    Likewise, disclosure of "internal business information, including financial information and information relating to strategic and staffing plans, business, training, marketing, promotional and sales plans, cost, rate and pricing structures" derives independent economic value from secrecy because sharing such details could lead to margin erosion as competitors undercut rates, leading to a race to the bottom in terms of

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

profitability.  Keeping pricing information secret also allows FBC to maintain leverage during negotiations with borrowers, allowing FBC to tailor loan terms and rates to the meet individual borrower needs while protecting its overall profitability.

63.    The same logic applies to FBC's "object code and source code to FBC's software, FBC's technical designs, FBC's data dictionaries, information relating to FBC's trade secrets, know-how, compilations of data and databases relating thereto, including information containing FBC's proprietary databases and the use and functions thereof; inventions, innovations, improvements, developments, designs, analyses, drawings, reports and all similar or related information, whether patentable or not; and other intellectual property rights of FBC."  Such information derives independent economic value from secrecy because it includes unique processes, best practices, strategies, as well as proprietary software, algorithms, and methodologies, which, as a result of their secrecy, allow FBC to train its employees to a high standard and obtain a competitive edge over other entities in the marketplace.  FBC's training materials also contain unique approaches to customer service, underwriting, risk assessment, and other aspects of mortgage lending that set the company apart from competitors and allow FBC to differentiate its services in the market.

64.    FBC has made reasonable efforts to maintain the secrecy of its Confidential Information, Trade Secrets, and Proprietary Information.  FBC prohibits disclosure of its Confidential Information, Trade Secrets, and Proprietary Information to third parties and only allows its Confidential Information, Trade Secrets, and Proprietary Information to be used for narrowly-prescribed purposes in furtherance of its business.

65.    FBC protects to the fullest extent its Confidential Information, Trade Secrets, and Proprietary Information, including and especially its non-public and personally-identifying client information.  Customer privacy and the non-disclosure of confidential client information are vitally important to FBC's business, and FBC would be seriously harmed by a breach of privacy or unauthorized disclosure of its Confidential Information, Trade Secrets, and Proprietary Information.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

66.    FBC has implemented security controls to safeguard its Confidential Information, Trade Secrets, and Proprietary Information, including, among other things, restricted access, non-disclosure covenants, password protection, dual authentication, and encryption.

67.    FBC's Confidential Information, Trade Secrets, and Proprietary Information are property of FBC, and the Former FBC Employees agreed not to copy such information. The Former FBC Employees "expressly agree[d] that such Confidential Information, Trade Secrets, and Proprietary Information are and shall remain the trade secrets and property of FBC." (*See* Exs. A–D, § 12.)  The Former FBC Employees also "specifically covenant[ed] and agree[d] not to make any duplicates, copies, or reconstructions of such materials, and that if any such duplicates, copies, or reconstructions are made, they shall become the property of FBC upon their creation." (*See id.*)

68.    The Former FBC Employees agreed not to use or disclose in any way whatsoever FBC's Confidential Information, Trade Secrets, and Proprietary Information— during or after their employment with FBC.  The Former FBC Employees agreed that they "will not at any time during the term of this Agreement or after the termination of this Agreement, disclose or use in any way whatsoever any of such" Confidential Information, Trade Secrets, and Proprietary Information.  (*See* Exs. A–D, § 12.)

69.    The above non-disclosure covenant is reasonable.  It protects FBC's Confidential Information, Trade Secrets, and Proprietary Information, which is related to FBC's business as a mortgage lender.  The covenant is reasonably related to protecting such information because it protects FBC's Confidential Information, Trade Secrets, and Proprietary Information from disclosure and does not impair the Former FBC Employees' ability to earn a livelihood.

70.    While employed at FBC, the Former FBC Employees had access to FBC's Confidential Information, Trade Secrets, and Proprietary Information.  On information and belief, the Former FBC Employees used FBC's Confidential Information, Trade Secrets, and Proprietary Information, in violation of the Employment Agreements.  As explained

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

below, the Former FBC Employees subsequently used and disclosed FBC's Confidential Information, Trade Secrets, and Proprietary Information.

71.     On or about September 29, 2023, Mount terminated employment with FBC and began working for NAF.

72.     On or about September 29, 2023, Gamboa terminated employment with FBC and began working for NAF.

73.     On or about September 29, 2023, Pennington terminated employment with FBC and began working for NAF.

74.     On or about November 10, 2023, Livingston terminated employment with FBC and began working for NAF.

75.     NAF wrongfully aided, abetted, and induced the Former FBC Employees to breach the Employment Agreements by accepting, accessing, using, and/or allowing its employees or persons under its control (including the Former FBC Employees) to accept, access, use, and disclose FBC's Confidential Information, Trade Secrets, and Proprietary Information, which the Former FBC Employees took from FBC before terminating their employment with FBC and accepting employment at NAF, in violation of their contractual non-disclosure obligations.  NAF wrongfully used FBC's Confidential Information, Trade Secrets, and Proprietary Information to exploit FBC's strategies, undercut FBC's rates, and improperly solicit FBC's clients and relationships with preferred home lenders.

76.     Since joining NAF (and during their employment with FBC while they were intending to move to NAF with an eye toward targeting the House Accounts), in violation of the Employment Agreements, the Former FBC Employees have used and disclosed FBC's Confidential Information, Trade Secrets, and Proprietary Information to NAF and to other third parties.  Specifically, the Former FBC Employees have used and disclosed FBC's Confidential Information, Trade Secrets, and Proprietary Information in order to exploit FBC's strategies, undercut FBC's rates, target FBC's clients and preferred lending relationships with builders, and give themselves and their new employer an unfair competitive advantage to FBC's detriment.   The Former FBC Employees' use and

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

disclosure of FBC's Confidential Information, Trade Secrets, and Proprietary Information continues to this day, in violation of the Employment Agreements.

77.     In sum, the Former FBC Employees transferred highly confidential and valuable information to NAF, where the Former FBC Employees and NAF later used it to generate significant current and future revenues and profits. NAF knew that the Former FBC Employees brought with them valuable, protected information that could and would be directly leveraged upon joining NAF.

**NAF's Intentional Interference: Non-Solicitation Obligations**

78.     The Former FBC Employees agreed not to solicit FBC's clients, customers, or employees.  The Employment Agreements provide that:

> During the period of time [the Former FBC Employees are] retained
> to provide services to FBC, and thereafter for a period of one year
> subsequent to the termination of [the Former FBC Employees']
> services to FBC for any reason whatsoever, [the Former FBC
> Employees] will not (a) solicit for employment by [the Former FBC
> Employees], or anyone else, or employ any employee of FBC or any
> person who was an employee of FBC within 12 months prior to such
> solicitation of employment; (b) induce, or attempt to induce, anyone
> having a business relationship with FBC to terminate or curtail such
> relationship or, on behalf of himself or anyone else, compete with
> FBC . . .

(*See* Exs. A–D, § 14.)  The Former FBC Employees "agree[d] and acknowledge[d]" that these non-solicitation covenants are "reasonable in that they give FBC a protection to which FBC is entitled and yet does not impair [the Former FBC Employees'] ability to earn a livelihood.  (*Id.*)

79.     NAF wrongfully aided, abetted, caused, and induced the Former FBC Employees to breach the Employment Agreements by assisting the Former FBC Employees, and allowing the Former FBC Employees as agents for NAF, to solicit FBC's

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

current, former, and potential employees, clients, and home builders (including Woodside Homes and The New Home Company) in violation of the Employment Agreements' above non-solicitation obligations.

80.    On or about September 29, 2023, Mount terminated employment with FBC and began working for NAF.

81.    On or about September 29, 2023, Gamboa terminated employment with FBC and began working for NAF.

82.    On or about September 29, 2023, Pennington terminated employment with FBC and began working for NAF.

83.    On or about November 10, 2023, Livingston terminated employment with FBC and began working for NAF.

84.    In violation of their Employment Agreements, the Former FBC Employees collectively orchestrated a mass departure of FBC's personnel by soliciting them to terminate employment with FBC and join NAF.  On information and belief, this solicitation occurred at least in part through indirect means, using NAF's recruiting and human resources departments.

85.    In violation of their Employment Agreements, the Former FBC Employees have attempted to induce and have induced certain clients and builder relationships, who had prior business relationships with FBC, to terminate such relationship with FBC and instead develop a business relationship with the Former FBC Employees and their new employer, NAF.

86.    On information and belief, the Former FBC Employees and NAF are using the information and relationships that he developed at FBC for the benefit of NAF, including FBC's client lists, builder lists, information regarding preferred lending relationships with builders, and pricing methodologies and practices.  As a result, the Former FBC Employees and NAF are soliciting FBC's clients and builder accounts and undercutting FBC from a pricing standpoint.

87.     In violation of the Employment Agreements, Livingston and Mount used FBC's trade secrets and confidential information in order to attempt to induce and to induce certain home builders, including Woodside Homes and The New Home Company, who had a prior preferred lending relationship with FBC, to terminate or substantially diminish such relationship with FBC and instead develop a business relationship with the Former FBC Employees and their new employer, NAF.  This is despite FBC having invested substantial resources into these builder relationships and having maintained an excellent reputation with the builders for years prior.

**NAF's Intentional Interference: Non-Competition Obligations**

88.     The Former FBC Employees agreed not to compete with FBC.  The Employment Agreements provide that:

> During the period of time [the Former FBC Employees are] retained to provide services to FBC, and thereafter for a period of one year subsequent to the termination of [the Former FBC Employees'] services to FBC for any reason whatsoever, [the Former FBC Employees] will not . . . induce, or attempt to induce, anyone having a business relationship with FBC to terminate or curtail such relationship or, on behalf of himself or anyone else, compete with FBC.

(*See* Exs. A–D, § 14.)  The Former FBC Employees "agree[d] and acknowledge[d]" that these non-competition covenants are "reasonable in that they give FBC a protection to which FBC is entitled and yet does not impair [the Former FBC Employees'] ability to earn a livelihood.  (*Id.*)

89.     Livingston and Mount further agreed not to compete as to House Accounts. Livingston's and Mount's House Addenda provide that:

> During the period of time [Livingston and Mount are] designated to work on the House Account, and thereafter for a period of two (2) years subsequent to the termination of [Livingston and Mount's]

services to FBC for any reason whatsoever, [Livingston and Mount] will not (a) work on loans, accept loan applications or referrals, whether directly or indirectly, or perform any origination activity whatsoever from said House Accounts or its customers, (b) solicit the House Account for mortgage services on behalf of the [Livingston and Mount] or anyone else, through [Livingston and Mount] or any Employer, whether directly or indirectly; or (c) induce, or attempt to induce, any House Account or House Account employee to cease or reduce working with FBC.

(*See* Exs. A–B, House Addendum, § 2.)  Livingston and Mount further "agree[d] and acknowledge[d] that the . . . non-competition covenants are reasonable in that they give FBC a protection to which FBC is entitled and yet does not impair [Livingston and Mount's] ability to earn a livelihood." (*Id.*, § 1.)

90.    NAF, as a competitor to FBC, wrongfully aided, abetted, caused, and induced the Former FBC Employees to breach their Employment Agreements by hiring the Former FBC Employees in violation of the Employment Agreements' non-competition clauses.

91.    On or about September 29, 2023, Mount, Gamboa, and Pennington terminated employment with FBC and began working for NAF, a direct competitor of FBC, in violation of the Employment Agreements' non-competition covenants.

92.    On or about November 10, 2023, Livingston terminated employment with FBC and began working for NAF, a direct competitor of FBC, in violation of the Employment Agreements' non-competition covenants.

93.    NAF wrongfully aided, abetted, caused, and induced the Former FBC Employees to breach the Employment Agreements by assisting the Former FBC Employees, and allowing the Former FBC Employees, as agents for NAF, to solicit FBC's current, former, and potential clients and home builders (including Woodside Homes and The New Home Company) in violation of the Employment Agreements' non-solicitation clauses and non-competition clauses.

94.     Since joining NAF (and during their employment with FBC while they were intending to move to NAF with an eye toward targeting the House Accounts), Livingston and Mount have worked on loans, accepted loan applications or referrals, and/or performed loan origination activity for Woodside Homes and The New Home Company, in violation of their House Addenda's non-competition covenants and the terms of their Compensation/Commission Agreements.

95.     Since joining NAF (and during their employment with FBC while they were intending to move to NAF with an eye toward targeting the House Accounts), Livingston and Mount have solicited Woodside Homes and/or The New Home Company for mortgage services on behalf of themselves and on behalf of their new employer, NAF, in violation of their House Addenda's non-competition covenants and the terms of their Employment Agreements (including their Compensation/Commission Agreements).

96.     Since joining NAF (and during their employment with FBC while they were intending to move to NAF with an eye toward targeting the House Accounts), Livingston and Mount have attempted to induce and have induced Woodside Homes and/or The New Home Company to cease or reduce working for FBC, in violation of their House Addenda's non-competition covenants.

**NAF's Intentional Interference: Computer Access Obligations**

97.     The Former FBC Employees agreed that FBC's files shall only be removed from FBC's computers and file management systems upon express prior written consent of FBC's board of directors.  The Employment Agreements provide:

> [The Former FBC Employees] agree[] that all files, records, documents, drawings, specifications, equipment, software, and similar items or technological information whether maintained in hard copy or by electronic means relating to FBC's business, whether prepared by [the Former FBC Employees] or others, are and shall remain exclusively the property of FBC and that they shall be removed from the premises or, if kept online, from the computer

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

systems of FBC only with the express prior written consent of the

Board.

(*See* Exs. A–D, § 12.)

98.     In violation of the Employment Agreements, the Former FBC Employees removed FBC's Confidential Information, Trade Secrets, and Proprietary Information from FBC's computer systems and file management systems without express prior written consent of FBC's board of directors.

99.     NAF wrongfully aided, abetted, caused, and induced the Former FBC Employees to breach the Employment Agreements by allowing the Former FBC Employees to use for the benefit of NAF the files that the Former FBC Employees removed from FBC's computers and file management systems without express prior written consent of FBC's board of directors, in violation of the Employment Agreements' computer access clause.

**NAF's Intentional Interference: Non-Disparagement Obligations**

100.    The Former FBC Employees agreed not to disparage FBC's good business reputation.  The Employment Agreements provide:

> During the period of time [the Former FBC Employees are] retained to provide services to FBC, and thereafter for a period of one year subsequent to the termination of [the Former FBC Employees'] services to FBC for any reason whatsoever, [the Former FBC Employees] will not . . . knowingly make any untrue statement concerning FBC or its directors or Employees to anyone.

(*See* Exs. A–D, § 12.)

101.    On information and belief, NAF wrongfully aided, abetted, and induced the Former FBC Employees to breach the Employment Agreements by assisting the Former FBC Employees, and allowing the Former FBC Employees, as agents for NAF, to disparage FBC's good business reputation to FBC's current and potential clients, in violation of the Employment Agreements' non-disparagement clauses, in order to give

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

NAF an unfair business advantage and allow NAF to begin servicing FBC's current and potential clients.

102.   On information and belief, in violation of the Employment Agreements, the Former FBC Employees knowingly made untrue statements regarding FBC's good business reputation in order to taint that reputation to FBC's current, former, and potential clients, and to FBC's house accounts, so that the Former FBC Employees and their new employer could improperly solicit those clients and house accounts.  This was a deliberate attempt by NAF to induce the Former FBC Employees to induce FBC's current and potential clients to terminate or curtail their business relationships with FBC.

**Damages and Improper Purpose**

103.   Prior to the filing of this action, FBC formally notified the Former FBC Employees of their breaches of the Employment Agreements, and provided an appropriate time to cure said breaches, in demand letters dated October 3, 2023 and November 13, 2023.  The Former FBC Employees have failed to cure said breaches and continue to commit said breaches to this day.

104.   On October 3, 2023 and November 13, 2023, FBC formally notified NAF of the Former FBC Employees' breaches and violations of law and that NAF's use of or access to any of FBC's documents, proprietary and confidential information, or trade secrets constituted aiding, abetting, causing, and inducing the Former FBC Employees in their breaches of the Employment Agreements and as interfering with the Former FBC Employees' contractual relationships with FBC.

105.   In aiding, abetting, causing, and inducing the Former FBC Employees to breach their contractual obligations, NAF acted knowingly, purposefully, willfully, and maliciously.  NAF knew that the interference with the contractual relationships between FBC and the Former FBC Employees was certain or substantially certain to occur as a result of NAF'S wrongful conduct because NAF knew and attempted to cause the following events: (a) the Former FBC Employees were terminating their employment with FBC in order to accept employment with NAF, (b) the Former FBC Employees were

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

bringing with them FBC's Confidential Information, Trade Secrets, and Proprietary Information, (c) the Former FBC Employees could only bring FBC's Confidential Information, Trade Secrets, and Proprietary Information if they had breached their computer access covenants, (d) the Former FBC Employees, other NAF employees, or other persons under NAF'S control were disparaging FBC's good business reputation to FBC's current and potential clients in order to give NAF an unfair business advantage and allow NAF to begin servicing FBC's current and potential clients, and (e) the Former FBC Employees were breaching their non-competition covenants to FBC by accepting employment with NAF.

106.    NAF's actions, described herein, were done purposefully, with malicious and unjustifiable intent, through improper means and with an improper purpose.

107.    NAF's interference was a substantial factor in causing FBC to suffer economic harm. NAF hired the Former FBC Employees knowing that they previously worked for FBC and allowed the Former FBC Employees to bring with them FBC's Confidential Information, Trade Secrets, and Proprietary Information, in breach of the Former FBC Employees' respective Employment Agreements and in violation of federal and state law.  On information and belief, NAF helped the Former FBC Employees solicit FBC's former employees using its recruiting and human resources departments, in violation of the Former FBC Employees' respective Employment Agreements.  NAF's actions directly enabled, aided, abetted, caused, and induced the Former FBC Employees breaches of contract and violations of law, resulting in damages to FBC in an amount that exceeds the jurisdictional minimum of this Court and that will be proven at trial.

108.    The Former FBC Employees' intentional breaches of the Employment Agreements, and NAF's inducement of those breaches, as described herein, have resulted in damages to FBC, and continue to damage FBC, in an amount that exceeds the jurisdictional minimum of this Court and that will be proven at trial.

109.    NAF's conduct constitutes intentional interference with contractual relationships, which has caused actual damage to FBC in an amount to be proven at trial.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

110.    As a direct and proximate result of NAF's conduct—and the Former FBC Employees' conduct, as agents for NAF—FBC has incurred and will continue to incur actual damages, in an amount that exceeds the jurisdictional minimum of this court, to be proven at trial, including without limitation lost business, lost profits, and the costs of investigating and seeking to halt NAF's wrongful conduct.

111.    NAF's actions have caused and continue to cause irreparable and incalculable harm and injury to FBC, including destroying FBC's goodwill and reputation with its client and referral sources, interfering with FBC's contractual and commercial relationships, disrupting the continuity of FBC's workforce, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information.  NAF's inducement of the Former FBC Employees' breaches continues to this day, since the Former FBC Employees' contractual obligations are ongoing, and will continue to cause immediate, irreparable, and incalculable injury, unless enjoined.  FBC has no adequate remedy at law.

112.    FBC is entitled to permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

### COUNT TWO

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

113.    FBC realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

114.    FBC has and had protectable business relationships with all of its employees that left FBC for NAF, as well as the clients and preferred lending relationships that NAF—and the Former FBC Employees, as agents for NAF—solicited, induced, attempted to solicit, or attempted to induce to leave FBC, as described above (the "Protectable Business Relationships").

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

115.   FBC had a reasonable expectation that: (a) its employees would continue their employment with FBC; (b) its clients would continue doing business with FBC and using FBC's services; and (c) its house accounts would continue providing preferred lender status and the associated stream of borrowers to FBC.

116.   Absent improper interference, FBC would have had greater prospective business advantage with the Protectable Business Relationships.

117.   At all relevant times, NAF had knowledge of the Protectable Business Relationships.

118.   As explained above, NAF—and the Former FBC Employees, as agents for NAF—wrongfully permitted and/or encouraged FBC's employees to terminate their employment relationships with FBC, in violation of their contractual and fiduciary duties to FBC, and have thereby interfered with FBC's prospective business advantage with its employees.  This includes NAF's wrongful encouragement of the Former FBC Employees to terminate their employment relationships with FBC and to begin working for NAF in violation of their non-competition agreements.

119.   As explained above, NAF—and the Former FBC Employees, as agents for NAF—improperly obtained FBC's current and prospective client information and encouraged FBC's current and prospective clients to terminate their business relationships with FBC so that NAF could begin servicing FBC's current and prospective clients and have thereby interfered with FBC's prospective business advantage with FBC's clients.

120.   As explained above, NAF—and the Former FBC Employees, as agents for NAF—improperly obtained FBC's preferred lender information and encouraged FBC's current and prospective preferred lending relationships with various home builders to terminate their business relationships with FBC so that NAF could obtain preferred lender status with those home builders and have thereby interfered with FBC's prospective business advantage with FBC's home builders.

121.   NAF—and the Former FBC Employees, as agents for NAF—succeeded in terminating FBC's relationship with its employees, clients, and home builders, and in

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

interfering with FBC's expectancy in those Prospective Business Relationships, causing damage to FBC.

122.    The actions taken by NAF—and the Former FBC Employees, as agents for NAF—described herein, were done purposefully, with malicious and unjustifiable intent, through improper means and with an improper purpose.

123.    As a direct and proximate result of NAF's conduct—and the Former FBC Employees' conduct, as agents for NAF—FBC has incurred and will continue to incur actual damages in an amount that exceeds the jurisdictional minimum of this court, in an amount to be proven at trial, including without limitation lost business, lost profits, and the costs of investigating and seeking to halt Defendants' wrongful conduct.

124.    NAF's conduct—and the Former FBC Employees' conduct, as agents for NAF—has caused and continues to cause immediate, irreparable, and incalculable harm and injury to FBC, including, among other things: destroying FBC's goodwill and reputation with its client and referral sources, interfering with FBC's contractual and commercial relationships, disrupting the continuity of FBC's workforce, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information.  The above-described tortious interference continues to this day, and will continue to cause immediate, irreparable, and incalculable injury, unless enjoined. FBC has no adequate remedy at law.

125.    FBC is entitled to permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

## COUNT THREE

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

126.    FBC realleges and incorporates by reference, as set forth herein, the allegations in all preceding paragraphs.

127.    As employees of FBC, the Former FBC Employees owed fiduciary duties to FBC, including the duties of loyalty and good faith.  The Former FBC Employees were

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

placed in a position of trust and confidence, where they had access to confidential employee, customer, and business information. This gave rise to the fiduciary duties of loyalty and good faith, requiring the Former FBC Employees to act solely for the benefit of FBC, and not contrary to FBC's interests, and to act honestly, fairly, and in good faith when dealing with FBC.

128. NAF had knowledge of the Employment Agreements between FBC and the Former FBC Employees, respectively. At all relevant times, NAF was aware that FBC and the Former FBC Employees terminated their employment with FBC in order to begin employment with NAF.

129. FBC sent NAF several demand letters in late 2022 regarding the content of its Employment Agreements with its employees, NAF's improper interference with those contractual relationships, and NAF's improper solicitation of FBC's employees. Since at least late 2022, NAF has been fully aware of the contents of FBC's Employment Agreements with its employees.

130. FBC also provided actual notice to NAF of its contractual relationships with the Former FBC Employees, and the Former FBC Employees' breaches of their fiduciary duties to FBC, in three demand letters sent on October 3, 2023 and November 13, 2023.

131. Despite this knowledge, NAF wrongfully acted to induce the Former FBC Employees to breach their fiduciary duties of loyalty and good faith to FBC.

132. After receiving such notice, NAF knowingly allowed the Former FBC Employees to continue (a) accessing, using, and disclosing FBC's proprietary, confidential, and trade secret information for the benefit of NAF; (b) diverting client, employee, home builder, and other business relationships from FBC to NAF; (c) soliciting FBC's employees to terminate employment with FBC and join NAF; and/or (d) disparaging FBC's good business reputation to FBC's current and potential clients and builders. NAF willfully enabled the Former FBC Employees to engage in this conduct, knowing that it violated the Former FBC Employees' duties of loyalty and good faith to FBC.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

133.    NAF willfully enabled the Former FBC Employees to engage in this conduct, for the benefit of NAF, knowing that it violated the Former FBC Employees' duties of loyalty and good faith to FBC.  NAF's wrongful conduct procured a breach of the Former FBC Employees' fiduciary duties to FBC, as described above.

134.    As a direct and proximate result of NAF's inducement of the Former FBC Employees' actions, FBC has suffered damages in an amount that exceeds the jurisdictional minimum of this court and in an amount to be proven at trial.  These damages include loss of key employees, clients, and other business relationships; loss of confidential information; loss of trade secrets; and disruption in the continuity of its workforce.  FBC's damages also include the  Former FBC Employees' compensation after their loyalty transferred to NAF but before they resigned from FBC, the costs of investigating and seeking to halt the damage to FBC's business, the increased costs of maintaining certain loans in FBC's pipeline, the loss of sales and loans from preferred lending relationships, and the loss of potential business as a result of disruptions caused by the Former FBC Employees' shifting loyalty.

135.    On information and belief, NAF's conduct was intentional, willful, outrageous, malicious, fraudulent, and made for an improper purpose, entitling FBC to punitive damages.

136.    NAF's conduct constitutes aiding and abetting the Former FBC Employees' breaches of fiduciary duty.

137.    NAF'S conduct has caused and continues to cause immediate, irreparable, and incalculable harm and injury to FBC, including, among other things: destroying FBC's goodwill and reputation with its client and referral sources, interfering with FBC's contractual and commercial relationships, disrupting the continuity of FBC's workforce, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information.  NAF's conduct continues to this day and will continue unless enjoined.  FBC has no adequate remedy at law.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____
-28-

138.   FBC is entitled to permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

### COUNT FOUR

### VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.*

139.   FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

### Trade Secrets

140.   FBC's trade secrets include without limitation current and potential client lists; lists of client names, addresses, personally-identifying information, and financial information; pricing and rate information; training materials; job aids; marketing guides; marketing strategy; supplier lists; vendor lists; referral lists; lists of home builders; lists of preferred lending relationships with home builders; and information regarding preferred lending relationships with builders ("FBC's Trade Secrets").

141.   FBC's Trade Secrets are not commonly known to the public.  FBC treats its Trade Secrets as highly confidential and protected by both federal and state regulations. FBC prohibits disclosure of its Trade Secrets to third parties and only allows its Trade Secrets to be used for narrowly-prescribed purposes in furtherance of its business.

142.   FBC's current and potential client lists derive independent economic value from secrecy because disclosure of non-public client information would allow a competitor to undercut FBC by directing its sales efforts to FBC's current and potential borrowers who are already using or who are considering using FBC's loan services.  The same logic applies to FBC's lists of client names, addresses, personally-identifying information, and financial information.

143.   FBC's pricing and rate information derives independent economic value from secrecy because sharing pricing details could lead to margin erosion, as competitors might undercut rates, leading to a race to the bottom in terms of profitability.  Keeping pricing information secret also allows FBC to maintain leverage during negotiations with

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

borrowers, allowing FBC to tailor loan terms and rates to the meet individual borrower needs while protecting its overall profitability.

144.   FBC's training materials and job aids derive independent economic value from secrecy because they include unique processes, best practices, strategies, as well as proprietary software, algorithms, and methodologies, which, as a result of their secrecy, allow FBC to train its employees to a high standard and obtain a competitive edge over other entities in the marketplace.  FBC's training materials also contain unique approaches to customer service, underwriting, risk assessment, and other aspects of mortgage lending that set the company apart from competitors and allow FBC to differentiate its services in the market.

145.   FBC's marketing guides and marketing strategy derive independent economic value from secrecy because FBC relies on lead generation techniques and data analytics to identify potential borrowers, and keeping those marketing techniques confidential prevents FBC's competitors from emulating them, ensuring a competitive advantage in sourcing potential clients.  FBC's marketing guides and strategy also include information regarding special promotions, discounts, and unique pricing structures that allow FBC to tailor loan terms and rates to the meet individual borrower needs while protecting its overall profitability and preventing a race to the bottom.

146.   FBC's supplier lists, vendor lists, referral lists, lists of home builders, lists of preferred lending relationships with home builders, and information regarding preferred lending relationships with builders all derive independent economic value from secrecy because disclosure of such information would allow FBC's competitors to poach FBC's builder relationships, and the associated stream of borrowers, after FBC has invested substantial time, effort, and money into understanding the builder's business needs and fostering a relationship.

147.   FBC has made reasonable efforts to maintain the secrecy of its Trade Secrets. FBC prohibits disclosure of its Trade Secrets to third parties and only allows its Trade Secrets to be used for narrowly-prescribed purposes in furtherance of its business.  FBC

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

protects to the fullest extent its Trade Secrets, including and especially its non-public and personally-identifying client information.  Customer privacy and the non-disclosure of confidential client information are vitally important to FBC's business, and FBC would be seriously harmed by a breach of privacy or unauthorized disclosure of its Trade Secrets. FBC has implemented security controls to safeguard its Trade Secrets, including, among other things, restricted access, non-disclosure covenants, password protection, dual authentication, and encryption.

**<u>Misappropriation</u>**

148.   The Former FBC Employees misappropriated FBC's Trade Secrets.

149.   As employees of FBC, the Former FBC Employees had access to volumes of FBC's Trade Secrets.  As explained above, the Former FBC Employees acquired FBC's Trade Secrets under contractual duties to maintain their secrecy and limit their use. Further, as employees of FBC, the Former FBC Employees acquired FBC's Trade Secrets under a general duty of loyalty and in the course of a confidential relationship with FBC, both of which imposed on the Former FBC Employees a duty to maintain the secrecy and limit the use of FBC's Trade Secrets.

150.   Toward the end of their employment with FBC, the Former FBC Employees intended to accept employment with NAF, and at that time, the Former FBC Employees acquired knowledge of FBC's Trade Secrets through improper means.  the Former FBC Employees misrepresented their intent to remain an employee of FBC in order to acquire knowledge of FBC's Trade Secrets.  the Former FBC Employees acquired knowledge of FBC's Trade Secrets with the intent to misappropriate FBC's Trade Secrets, in breach of their contractual duties to FBC, their confidential relationship with FBC, and their duty of loyalty to FBC.

151.   On or about September 29, 2023, Mount, Gamboa, and Pennington terminated employment with FBC and began working for NAF.

152.   On or about November 10, 2023, Livingston terminated employment with FBC and began working for NAF.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

153.    After accepting employment at NAF and the Former FBC Employees subsequently used and disclosed FBC's Trade Secrets without FBC's consent to begin servicing FBC's current, former, and potential clients and preferred lending relationships with home builders (such as Woodside Homes and The New Home Company), giving themselves and their new employer an unfair competitive advantage.

154.    Therefore, the Former FBC Employees (A) disclosed and used FBC's Trade Secrets after using improper means to acquire knowledge of those Trade Secrets; (B) disclosed and used FBC's Trade Secrets while knowing that those Trade Secrets were acquired by improper means; (C) disclosed and used FBC's Trade Secrets while knowing that those Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use; and (D) disclosed and used FBC's Trade Secrets while knowing that they had derived those Trade Secrets while owing FBC a duty to maintain their secrecy and limit their use.

155.    Based on the Employment Agreements, the Former FBC Employees were fully aware of the confidential, proprietary, and trade secret nature of FBC's Trade Secrets. Further, FBC formally notified the Former FBC Employees of the confidential and proprietary nature of its Trade Secrets in three respective demand letters dated October 3, 2023.

156.    NAF misappropriated FBC's Trade Secrets.

157.    NAF has engaged in a concerted campaign to poach FBC's former employees and obtain FBC's Trade Secrets from FBC's former employees, and based on demand letters from FBC to NAF dating back to early 2022, as well as litigation filed in January 2023 in other districts, NAF has had actual knowledge—or, at the very least, has had reason to know—that the employees it is targeting have acquired FBC's Trade Secrets through improper means.  NAF acquired FBC's Trade Secrets from the Former FBC Employees s while knowing or having reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees through improper means.  Upon hiring the Former FBC Employees, NAF knew or had reason to know that the Former FBC Employees

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

brought with them valuable, protected information that could and would be directly leveraged upon joining NAF, and NAF knew that the Former FBC Employees had acquired that information through improper means.

158.    NAF has also disclosed and used FBC's Trade Secrets in order to begin servicing FBC's current, former, and potential clients and preferred lending relationships with home builders (such as Woodside Homes and The New Home Company).

159.    At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that the Trade Secrets were derived from the Former FBC Employees, who had used improper means to acquire the Trade Secrets, as explained above.

160.    At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees, who acquired FBC's Trade Secrets while employed for FBC under circumstances giving rise to a duty in the Former FBC Employees to FBC to maintain the Trade Secrets' secrecy and to limit the Trade Secrets' use.

161.    At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees, who acquired FBC's Trade Secrets while employed for FBC, which gave rise to a duty in the Former FBC Employees to FBC to maintain the Trade Secrets' secrecy and to limit the Trade Secrets' use.

162.    FBC notified NAF of NAF's misappropriation of FBC's Trade Secrets, as described above, in demand letters dating back to December 2022 and other lawsuits filed as early as January 2023.  FBC sent additional demand letters specific to the Former FBC Employees, cc'ing NAF, on October 3, 2023 and November 13, 2023.  NAF thus had actual knowledge of the Trade Secret misappropriation described above, yet NAF has continued to use and disclose FBC's Trade Secrets to this day.

163.    In sum, NAF (A) acquired FBC's Trade Secrets knowingly through improper means; (B) used and disclosed FBC's Trade Secrets after acquiring them through improper

means; (C) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who utilized improper means to acquire the Trade Secrets; (D) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who had acquired the Trade Secrets as employees under circumstances giving rise to a duty to FBC to maintain their secrecy and limit their use; and (E) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who had acquired the Trade Secrets as employees owing FBC a duty to maintain their secrecy and limit their use.

**Damages**

164. The unlawful use and/or disclosure of FBC's Trade Secrets by NAF continues to this day.

165. On information and belief, NAF's improper access and subsequent use and/or disclosure of FBC's Trade Secrets was willful, deliberate, intentional, and malicious.

166. FBC has been and continues to be damaged as a direct and proximate result of NAF's actions, including by being forced to expend resources to investigate and try to halt the unauthorized use, access, copying, downloading, transmission, and/or abuse of its Trade Secrets.  FBC seeks compensatory and other equitable relief under 18 U.S.C. § 1836 *et seq.*, in an amount that exceeds the jurisdictional minimum of this court and in an amount to be proven at trial.

167. NAF's conduct has caused, and continues to cause, irreparable and incalculable harm and injury to FBC, including: destroying FBC's goodwill, damaging FBC's reputation with its client and referral sources, interfering with FBC's irreplaceable and unique contractual and commercial relationships, disrupting the continuity of FBC's workforce, loss of trade secrets, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information.  NAF's

breaches continue to this day and will continue to cause immediate, irreparable, and incalculable injury, unless enjoined.  FBC has no adequate remedy at law.

168.    As a direct and proximate result of NAF's misappropriation of FBC's Trade Secrets, NAF has been unjustly enriched, including by avoiding the time, effort, research, development, and other costs that NAF would have had to devote to developing the Trade Secrets that NAF misappropriated.  NAF should be required to disgorge their wrongful gains and avoided costs.

169.    Pursuant to 18 U.S.C. § 1836(b)(3), FBC is entitled to permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

**COUNT FIVE**

**VIOLATION OF ARIZONA UNIFORM TRADE SECRETS ACT, A.R.S. § 44-401,**

***et seq.***

170.    FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

**Trade Secrets**

171.    FBC's trade secrets include without limitation current and potential client lists; lists of client names, addresses, personally-identifying information, and financial information; pricing and rate information; training materials; job aids; marketing guides; marketing strategy; supplier lists; vendor lists; referral lists; lists of home builders; lists of preferred lending relationships with home builders; and information regarding preferred lending relationships with builders ("FBC's Trade Secrets").

172.    FBC's Trade Secrets are not commonly known to the public.  FBC considers its Trade Secrets to be highly confidential and protected by both federal and state regulations.  FBC prohibits disclosure of its Trade Secrets to third parties and only allows its Trade Secrets to be used for narrowly-prescribed purposes in furtherance of its business.

173.    FBC's current and potential client lists derive independent economic value from secrecy because disclosure of non-public client information would allow a competitor

to undercut FBC by directing its sales efforts to FBC's current and potential borrowers who are already using or who are considering using FBC's loan services. The same logic applies to FBC's lists of client names, addresses, personally-identifying information, and financial information.

174.    FBC's pricing and rate information derives independent economic value from secrecy because sharing pricing details could lead to margin erosion, as competitors might undercut rates, leading to a race to the bottom in terms of profitability. Keeping pricing information secret also allows FBC to maintain leverage during negotiations with borrowers, allowing FBC to tailor loan terms and rates to the meet individual borrower needs while protecting its overall profitability.

175.    FBC's training materials and job aids derive independent economic value from secrecy because they include unique processes, best practices, strategies, as well as proprietary software, algorithms, and methodologies, which, as a result of their secrecy, allow FBC to train its employees to a high standard and obtain a competitive edge over other entities in the marketplace. FBC's training materials also contain unique approaches to customer service, underwriting, risk assessment, and other aspects of mortgage lending that set the company apart from competitors and allow FBC to differentiate its services in the market.

176.    FBC's marketing guides and marketing strategy derive independent economic value from secrecy because FBC relies on lead generation techniques and data analytics to identify potential borrowers, and keeping those marketing techniques confidential prevents FBC's competitors from emulating them, ensuring a competitive advantage in sourcing potential clients. FBC's marketing guides and strategy also include information regarding special promotions, discounts, and unique pricing structures that allow FBC to tailor loan terms and rates to the meet individual borrower needs while protecting its overall profitability and preventing a race to the bottom.

177.    FBC's supplier lists, vendor lists, referral lists, lists of home builders, lists of preferred lending relationships with home builders, and information regarding preferred

lending relationships with builders all derive independent economic value from secrecy because disclosure of such information would allow FBC's competitors to poach FBC's builder relationships, and the associated stream of borrowers, after FBC has invested substantial time, effort, and money into understanding the builder's business needs and fostering a relationship.

178. FBC has made reasonable efforts to maintain the secrecy of its Trade Secrets. FBC prohibits disclosure of its Trade Secrets to third parties and only allows its Trade Secrets to be used for narrowly-prescribed purposes in furtherance of its business. FBC protects to the fullest extent its Trade Secrets, including and especially its non-public and personally-identifying client information. Customer privacy and the non-disclosure of confidential client information are vitally important to FBC's business, and FBC would be seriously harmed by a breach of privacy or unauthorized disclosure of its Trade Secrets. FBC has implemented security controls to safeguard its Trade Secrets, including, among other things, restricted access, non-disclosure covenants, password protection, dual authentication, and encryption.

**Misappropriation**

179. The Former FBC Employees misappropriated FBC's Trade Secrets.

180. As employees of FBC, the Former FBC Employees had access to volumes of FBC's Trade Secrets. As explained above, the Former FBC Employees acquired FBC's Trade Secrets under contractual duties to maintain their secrecy and limit their use. Further, as employees of FBC, the Former FBC Employees acquired FBC's Trade Secrets under a general duty of loyalty and in the course of a confidential relationship with FBC, both of which imposed on the Former FBC Employees a duty to maintain the secrecy and limit the use of FBC's Trade Secrets.

181. Toward the end of their employment with FBC, the Former FBC Employees intended to accept employment with NAF, and at that time, the Former FBC Employees acquired knowledge of FBC's Trade Secrets through improper means. The Former FBC Employees misrepresented their intent to remain an employee of FBC in order to acquire

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

knowledge of FBC's Trade Secrets.  The Former FBC Employees acquired knowledge of FBC's Trade Secrets with the intent to misappropriate FBC's Trade Secrets, in breach of their contractual duties to FBC, their confidential relationship with FBC, and their duty of loyalty to FBC.

182.   On or about September 29, 2023, Mount, Gamboa, and Pennington terminated employment with FBC and began working for NAF.

183.   On or about November 10, 2023, Livingston terminated employment with FBC and began working for NAF.

184.   After accepting employment at NAF, the Former FBC Employees subsequently used and disclosed FBC's Trade Secrets without FBC's consent to begin servicing FBC's current, former, and potential clients and preferred lending relationships with home builders (such as Woodside Homes and The New Home Company), giving themselves and their new employer an unfair competitive advantage.

185.   Therefore, the Former FBC Employees (A) disclosed and used FBC's Trade Secrets after using improper means to acquire knowledge of those Trade Secrets; (B) disclosed and used FBC's Trade Secrets while knowing that those Trade Secrets were acquired by improper means; (C) disclosed and used FBC's Trade Secrets while knowing that those Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use; and (D) disclosed and used FBC's Trade Secrets while knowing that they had derived those Trade Secrets while owing FBC a duty to maintain their secrecy and limit their use.

186.   Based on the Employment Agreements, the Former FBC Employees were fully aware of the confidential, proprietary, and trade secret nature of FBC's Trade Secrets. Further, FBC formally notified the Former FBC Employees of the confidential and proprietary nature of its Trade Secrets in three respective demand letters dated October 3, 2023 and November 13, 2023.

187.   NAF misappropriated FBC's Trade Secrets.

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

188.   NAF has engaged in a concerted campaign to poach FBC's former employees and obtain FBC's Trade Secrets from FBC's former employees, and based on demand letters from FBC to NAF dating back to early 2022, as well as litigation filed in January 2023 in other districts, NAF has had actual knowledge—or, at the very least, has had reason to know—that the employees it is targeting have acquired FBC's Trade Secrets through improper means.   NAF acquired FBC's Trade Secrets from the Former FBC Employees s while knowing or having reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees through improper means.   Upon hiring the Former FBC Employees, NAF knew or had reason to know that the Former FBC Employees brought with them valuable, protected information that could and would be directly leveraged upon joining NAF, and NAF knew that the Former FBC Employees had acquired that information through improper means.

189.   NAF has also disclosed and used FBC's Trade Secrets in order to begin servicing FBC's current, former, and potential clients and preferred lending relationships with home builders (such as Woodside Homes and The New Home Company).

190.   At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that the Trade Secrets were derived from the Former FBC Employees, who had used improper means to acquire the Trade Secrets, as explained above.

191.   At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees, who acquired FBC's Trade Secrets while employed for FBC under circumstances giving rise to a duty in the Former FBC Employees to FBC to maintain the Trade Secrets' secrecy and to limit the Trade Secrets' use.

192.   At the time of NAF's disclosure and use of FBC's Trade Secrets, NAF knew or had reason to know that FBC's Trade Secrets were acquired by the Former FBC Employees, who acquired FBC's Trade Secrets while employed for FBC, which gave rise

to a duty in the Former FBC Employees to FBC to maintain the Trade Secrets' secrecy and to limit the Trade Secrets' use.

193.     FBC notified NAF of NAF's misappropriation of FBC's Trade Secrets, as described above, in demand letters dating back to December 2022 and other lawsuits filed as early as January 2023.  FBC sent additional demand letters specific to the Former FBC Employees, cc'ing NAF, on October 3, 2023 and November 13, 2023.  NAF thus had actual knowledge of the Trade Secret misappropriation described above, yet NAF has continued to use and disclose FBC's Trade Secrets to this day.

194.     In sum, NAF (A) acquired FBC's Trade Secrets knowingly through improper means; (B) used and disclosed FBC's Trade Secrets after acquiring them through improper means; (C) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who utilized improper means to acquire the Trade Secrets; (D) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who had acquired the Trade Secrets as employees under circumstances giving rise to a duty to FBC to maintain their secrecy and limit their use; and (E) used and disclosed FBC's Trade Secrets while knowing or having reason to know that the Trade Secrets were derived through the Former FBC Employees, who had acquired the Trade Secrets as employees owing FBC a duty to maintain their secrecy and limit their use.

**Damages**

195.     The unlawful use and/or disclosure of FBC's Trade Secrets by NAF continues to this day.

196.     On information and belief, NAF's improper access and subsequent use and/or disclosure of FBC's Trade Secrets was willful, deliberate, intentional, and malicious.

197.     FBC has been and continues to be damaged as a direct and proximate result of NAF's actions, including by being forced to expend resources to investigate and try to

halt the unauthorized use, access, copying, downloading, transmission, and/or abuse of its Trade Secrets. FBC seeks compensatory and other equitable relief under A.R.S. § 44-401 *et seq.*, in an amount that exceeds the jurisdictional minimum of this court and in an amount to be proven at trial.

198.   NAF's conduct has caused, and continues to cause, irreparable and incalculable harm and injury to FBC, including: destroying FBC's goodwill, damaging FBC's reputation with its client and referral sources, interfering with FBC's irreplaceable and unique contractual and commercial relationships, disrupting the continuity of FBC's workforce, loss of trade secrets, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information. NAF's breaches continue to this day and will continue to cause immediate, irreparable, and incalculable injury, unless enjoined. FBC has no adequate remedy at law.

199.   As a direct and proximate result of NAF's misappropriation of FBC's Trade Secrets, NAF has been unjustly enriched, including by avoiding the time, effort, research, development, and other costs that NAF would have had to devote to developing the Trade Secrets that NAF misappropriated. NAF should be required to disgorge their wrongful gains and avoided costs.

200.   Pursuant to A.R.S. §§ 44-402–04, FBC is entitled to permanent injunctive relief, compensatory damages, punitive and exemplary damages, disgorgement of unjust enrichment, attorneys' fees, costs, and other equitable relief.

## COUNT SIX

### VIOLATION OF ARIZONA REVISED STATUES § 44-1521, *et seq.*

201.   FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

202.   Defendants, as described above, have engaged in unlawful, unfair, and/or fraudulent business practices with respect to FBC and received a substantial benefit as a result of these practices.

203.   Using unlawful, unfair, and/or fraudulent business practices, NAF induced the Former FBC Employees to abuse their position of trust and confidence to misappropriate FBC's confidential and proprietary information, misappropriate FBC's Trade Secrets, and breach their respective Employment Agreements in accessing, without authorization, FBC's Computer Systems and Trade Secrets.  NAF's unlawful business practices violated Arizona law and the Defend Trade Secrets Act, as explained above. NAF's wrongful conduct was designed to provide, and did provide, , NAF with an unfair business advantage and allowed NAF to poach FBC's key employees and business relationships and begin servicing FBC's clients and preferred lending relationships with home builders.

204.   Using unlawful, unfair, and/or fraudulent business practices, NAF aided and abetted the Former FBC Employees in breaching their respective Employment Agreements, intentionally interfered with FBC's contractual relationships with the Former FBC Employees and allowed the Former FBC Employees to give NAF access to FBC's confidential and proprietary information and Trade Secrets.  NAF's unlawful business practices violated Arizona law and the Defend Trade Secrets Act, as explained above. NAF's wrongful conduct was designed to provide, and did provide, NAF, with an unfair business advantage and allowed NAF to poach and begin servicing FBC's clients.

205.   NAF's wrongful actions as described herein constitute unlawful, unfair, and fraudulent business practices in violation of A.R.S. § 44-1521 *et seq.*

206.   FBC has been and continues to be damaged by NAF's actions, including by the loss of clients, loss of preferred lending relationships, loss of trade secrets, and being forced to expend resources to investigate and try to halt the unauthorized use, access, alteration, copying, downloading, destroying, and/or abuse of its Computer Systems.  FBC seeks compensatory damages in an amount that exceeds the jurisdictional minimum of this court and in an amount to be proven at trial.

207.   FBC has suffered irreparable and incalculable harm and injuries resulting from NAF's conduct, including destroying FBC's goodwill and reputation with its client

and referral sources, interfering with FBC's contractual and commercial relationships, disrupting the continuity of FBC's workforce, and threatening the continued use, disclosure, and misappropriation of FBC's confidential, proprietary, and trade secret information. The harm will continue unless NAF is enjoined from further unauthorized use of, copying, access, alteration or destruction of FBC's protected Computer Systems. FBC has no adequate remedy at law and seeks equitable relief under A.R.S. § 44-1528.

208. As a direct and proximate result of Defendants' violations of A.R.S. § 44-1521 *et seq*., NAF has obtained wrongful gains at the expense of FBC. NAF should be required to disgorge these gains. Although the total amount subject to disgorgement is not yet known, this amount exceeds the jurisdictional minimum of this Court and will be proven at trial.

## COUNT SEVEN

### CIVIL CONSPIRACY

209. FBC realleges and incorporates by reference, as if fully set forth herein, the allegations in all of the preceding paragraphs.

210. NAF and the Former FBC Employees engaged in a civil conspiracy to intentionally interfere with FBC's contractual relationships, aid and abet FBC's employees in breaching their fiduciary, legal and contractual duties to FBC, and misappropriate FBC's confidential information.

211. NAF and the Former FBC Employees agreed to accomplish an unlawful purpose of misappropriating FBC's confidential information, intentionally interfering with FBC's contracts and business relationships, and aiding and abetting the Former FBC Employees in breaching their fiduciary, legal and contractual duties to FBC, as described above.

212. Specifically, NAF and the Former FBC Employees engaged in a concerted campaign to tortiously interfere with FBC's contractual and business relations by identifying which home builders and house accounts FBC has developed and seeking to interfere with those relationships by unlawfully a] soliciting FBC's employees to leave

FBC and join NAF; b] targeting FBC's long-standing relationships with its home builders and house accounts (frequently when NAF has had no prior relationship with those entities); and c] acquire, use, and disclose FBC's trade secrets (including pricing strategies and business generation methods) obtained from those former employees (including the Former FBC Employees) in order to improperly solicit FBC's employees, clients and preferred lending relationships with home builders all to the detriment and damage of FBC.

213.   On information and belief, NAF is acting with a pattern and practice to interfere with FBC's client relationships, employee relationships and contracts, and builder relationships and house accounts in multiple jurisdictions, including California, Georgia, and Arizona.

214.   NAF has improperly solicited and induced entire branches of FBC's employees to breach their contracts with FBC and terminate their contractual relationships with FBC. NAF's Scheme involves soliciting employees of FBC to leave FBC and join NAF, such that those employees can bring their client relationships and builder relationships from FBC to NAF in order for NAF to improperly obtain business that it never had and never would have had without the misappropriation of FBC's trade secrets and unlawful solicitation and interference with the employees, clients, and builder relationships that FBC invested substantial time and money into developing.

215.   NAF has improperly solicited and induced clients with whom FBC had a prior relationship to terminate their business relationships with FBC—clients with whom FBC had longstanding relationships and an expectation that those relationships wound continue (and with whom NAF had no prior relationship).

216.   NAF has improperly solicited and induced builders with whom FBC had a preferred lending relationship to terminate their business relationships with FBC—builders with whom FBC had longstanding relationships and an expectation that those relationships wound continue (and with whom NAF had no prior relationship).

217.   As a direct and proximate result of NAF's pattern of unlawful activity, FBC has suffered damages in an amount that exceeds the jurisdictional minimum of this court

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

and in an amount to be proven at trial.  FBC's damages include the loss of key employees, clients, builders, and other business relationships; loss of confidential information; loss of trade secrets; and disruption in the continuity of its workforce.  FBC's damages also include, without limitation, the costs of investigating and seeking to halt the damage to FBC's business, the loss of investment value in key client relationships, the increased costs of maintaining certain loans in FBC's pipeline, the loss of sales and loans from preferred lending relationships, and the loss of potential business as a result of disruptions caused by NAF through its Scheme.

218.   All of FBC's injuries were reasonably foreseeable given its longstanding relationships with its employees, clients, and builders and given the obvious damage that would be caused from intentional interference with those relationships via the scheme, as described above.

219.   In addition to compensatory damages, FBC is entitled to punitive damages because the conspiratorial acts described herein were committed knowingly, purposefully, willfully, and maliciously.  Such an award will prevent NAF from engaging in such conduct in the future.

220.   NAF enacted its Scheme in California around November 2022.  NAF then continued its scheme in Georgia in September 2023 and in Arizona in November 2023. NAF's pattern and practice represents a continuing threat of unlawful activity (or alternatively, lawful activity committed for an unlawful purpose) and a continuing threat of irreparable harm to FBC's business.  FBC has already lost goodwill, unique client relationships, and trade secrets, and FBC will continue to suffer immediate, irreparable, and incalculable injury, unless NAF is enjoined.  FBC has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, FBC prays for judgment as follows:

1.     That judgment be entered in favor of FBC on all claims for relief;

2.     For compensatory damages, lost profits, and restitution;

FBC MORTGAGE, LLC'S COMPLAINT
Case No._____

3.      For punitive and exemplary damages on all claims for relief for which such damages are authorized;

4.      For pre-judgment and post-judgment interest at the maximum rate allowable under Arizona law;

5.      For injunctive relief requiring NAF to refrain from using FBC's trade secrets, confidential and proprietary information, and other documents, and further requiring NAF to return these things to FBC, and further requiring NAF to disgorge its profits;

6.      For reasonable attorneys' fees;

7.      For costs of suit;

8.      For such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

FBC demands a trial by jury.


DATED:  December 15, 2023

**FOLEY & LARDNER LLP**
Bryce W. Talbot, AZ Bar No. 035756
Eileen R. Ridley (*pro hac vice* application
      forthcoming)
Emma E. Soldon (*pro hac vice* application
      forthcoming)


*/s/ Bryce W. Talbot*
Bryce W. Talbot
Attorneys for Plaintiff FBC MORTGAGE,
LLC