IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FBC Mortgage, LLC,<br><br>    Plaintiff,<br>vs.<br><br>New American Funding, LLC, et al.,<br><br>    Defendants. | No. CV-23-02629-PHX-SPL<br><br>**ORDER** |

  Before the Court are FBC Mortgage, LLC's ("Plaintiff") Motion to Dismiss Counterclaim (Doc. 14), Memorandum in Support of its Motion (Doc. 14-1), and New American Funding, LLC, et al.'s ("Defendants") Response (Doc. 16). Plaintiff did not file a Reply. Also before the Court are Defendants' Motion to Stay (Doc. 13), Plaintiff's Response to that Motion (Doc. 15), and each party's respective supplemental briefing on the issue as ordered by the Court. (Docs. 19 and 20). The Court now rules as follows.[1]

**I. BACKGROUND**

  Plaintiff and Defendants are competitors in the mortgage lending industry. (Doc. 1 at 4). Plaintiff alleges that in the fall of 2022, Defendants began interfering with Plaintiff's business by soliciting Plaintiff's employees to leave Plaintiff's company and join Defendants in a similar business model. (Doc. 14-1 at 6). Plaintiff further alleges that

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Defendants improperly obtained and disclosed Plaintiff's trade secrets while doing so, including pricing strategies and business generation methods. (*Id*.). Plaintiff claims that this allowed Defendants to solicit their clients and preferred lending relationships with home builders. (*Id*.). As a result, Plaintiff filed suit in the Northern District of California ("California Action") against Defendants, and several additional individuals, on January 11, 2023. (Doc. 13-1 at 4). Plaintiff alleges that they later became aware of additional similar conduct by Defendants in Arizona which occurred in the fall of 2023. (Doc. 14-1 at 6). Due to this, Plaintiff filed the instant suit ("Arizona Action") against Defendants on December 15, 2023. (Doc. 1 at 1). Plaintiff brings seven claims against Defendants: Count One for Intentional Interference with Contractual Relationships, Count Two for Intentional Interference with Prospective Economic Advantage, Count Three for Aiding and Abetting Breach of Fiduciary Duty, Count Four for Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., Count Five for Violation of the Arizona Trade Secrets Act, A.R.S. § 44-401, Count Six for Violation of Arizona's Consumer Fraud Act, A.R.S. § 44-1521, et seq., and Count Seven for Civil Conspiracy. (Doc. 1). On January 26, 2024, Defendants filed a Counterclaim for Unfair Business Practices in Violation of California Business and Professions Code §§ 17200, et seq. (Doc. 12 at 4).

On February 5, 2024, Defendants requested a stay of the Arizona Action, arguing that there was substantial overlap in the factual and legal questions between the California and Arizona Actions. (Doc. 13-1 at 2). Plaintiff argued that a stay was improper based on Supreme Court's holding in *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). (Doc. 15 at 5). The Court ordered additional briefing given that neither party addressed the Ninth Circuit first-to-file rule as described in *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). (Doc. 17 at 1).

On February 16, 2024, Plaintiff moved to dismiss Defendants' Counterclaim. (Doc. 14-1 at 5). Plaintiff argues that the Arizona litigation privilege bars Defendants' Counterclaim and also that California law prohibits extraterritorial application of California Business and Professions Code. (*Id*. at 7 and 10). Defendants respond by arguing

2

that Plaintiff is incorrect on these assertions as a matter of law. (Doc. 16 at 2). Specifically, Defendants argue that the California Action is based on conduct, as opposed to speech by Plaintiff, and thus Arizona litigation privilege does not apply. (*Id*. at 5). Defendants further point out that the California Business and Professions Code has been amended since the cases which Plaintiff cites to were published. (*Id*. at 8).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

On a motion to dismiss, it is the defendant's burden to demonstrate that the plaintiff has failed to state a claim. *See Avalanche Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555-TLN-KJN, 2017 WL 6040293, at *3 (E.D. Cal. Dec. 6, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim."); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (on a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented."); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) ("district court erroneously placed the burden on Plaintiffs to demonstrate that they stated a claim for relief" and "[b]ecause . . . Defendants failed to meet their burden of proof, . . . the district court should have dismissed Defendants' motion.").

### III. DISCUSSION

**A. Motion to Stay (Doc. 13)**

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). "It is instead 'an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34.

The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court. *Alltrade, Inc.*, 946 F.2d at 625. When applying the first-to-file rule, courts should strive to maximize "economy, consistency, and comity." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). A court may "accept or decline jurisdiction" over a case that was first filed elsewhere in its discretion. *Alltrade*, 946 F.2d at 628 ("The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84 (1952))). Since application of the first-to-file rule is discretionary, district courts can, "in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." *Id*. at 628. In particular, courts make exceptions to the rule in cases of bad faith or when the first-filed action is anticipatory or an attempt to forum shop. *Id*. Thus, a court analyzes three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of the issues. *See id.* at 625.

The first-to-file rule does not require all the issues in the separate actions to be identical, but only to be "substantially similar." *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010). Courts have found substantial similarity between

actions where the "central question" is the same, even if specific legal issues within the separate actions vary. *See Ward v. Follett Corp.*, 158 F.R.D. 645, 648–49 (N.D. Cal. 1994) (applying the first-to-file rule where the "central question" in both actions—whether the plaintiff was entitled to royalties—was the same); *Bashiri v. Sadler*, No. CV 07–2268–PHX–JAT, 2008 U.S. Dist. LEXIS 121002, at *6 (D. Ariz. June 25, 2008) ("[W]hile specific legal issues vary across the litigations, the discovery and evidence necessary to litigate each is substantially similar.").

In the present case, the Court is satisfied that both the chronology of the lawsuits and the similarity of the parties support application of the first-to-file rule. The California Action was filed over a year before the Arizona Action, and all of the Defendants in the Arizona Action are parties to the California Action. *See Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (finding that parties are substantially similar despite the presence of an additional defendant in the first complaint). The most difficult consideration in the present analysis is the similarity of the issues between the California Action and the Arizona Action. The underlying legal questions in the two Actions are very similar. Plaintiff brings several identical theories of recovery in both cases, including Intentional Interference with Contractual Relationships, Aiding and Abetting Breach of Fiduciary Duty, Intentional Interference with Prospective Economic Advantage, and Violation of the Defend Trade Secrets Act. (Doc. 19 at 7). Additionally, the only differing legal theories in the two cases are parallel state law claims with substantial overlap in their elements. (*Id.*). This favors application of the first-to-file rule. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95–96 (9th Cir. 1982) (finding the issues identical because they "differ only as to the remedy sought").

However, the Court finds it dispositive that the alleged factual conduct differs in each Action. The alleged conduct in Arizona took place after the California Action was filed and involves different alleged instances of improper client solicitation. (Doc. 20 at 9). Thus, even if the California Action resulted in a final judgment on the merits, it would not have a preclusive effect on this Court. *See Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d

453, 458 (9th Cir. 1980) ("The question [before applying res judicata to bar the second suit] is . . . whether [plaintiff] had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below."); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."). Therefore, judicial economy would not be served by staying the Arizona Action. Furthermore, the principles of consistency and comity would also not be served given the factual distinctions between the two Actions. Simply because this Court might reach different legal conclusions than the California Action does not make these rulings inconsistent, as each court would have different facts before them. *See U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1132 (9th Cir. 2015) (finding that a statutory first-to-file rule did not apply as "Godecke's second and third claims [we]re based on different material facts than the claims contained in Hartpence's earlier-filed complaint," and thus they were "not precluded by the first-to-file bar."). Finally, the Court sees no evidence of bad faith, anticipatory suit, or forum shopping. As a result, the Court will decline to apply the first-to-file rule here and will not stay the present action.

### B. Motion to Dismiss Counterclaim (Doc. 14)

As stated previously, Plaintiff asserts two arguments favoring dismissal of Defendants' Counterclaim. The Court will address each in turn.

#### 1. Arizona Litigation Privilege

Arizona's litigation privilege bars lawsuits based on the speech of "judges, parties, lawyers, witnesses and jurors." *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984). Arizona extends the litigation privilege not just to in-court statements and filed pleadings, but also to statements "relating to pending or proposed litigation." *Goldman v. Sahl*, 462 P.3d 1017, 1017 (Ariz. Ct. App. 2020) ("The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be

hobbled by the fear of reprisal by actions for defamation."). Litigation privilege exists to allow "the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition." *Green Acres*, 688 P.2d at 621. (citing Prosser, Law of Torts (4th ed. 1971) § 114 p. 777–81). The only recognized exceptions to this include suits for improper litigation conduct. *Goldman*, 462 P.3d at 1029 n.5 (clarifying that the court uses the term "improper litigation conduct" to refer to claims for "wrongful use of a civil proceeding, malicious prosecution, and abuse of process"). The existence of the privilege is thus a question of law for courts to decide. *Id*. (citing Restatement (Second) of Torts, § 619). Critically though, "if a party's claim is supported by factual allegations that qualify as conduct—not communication—then Arizona's litigation privilege does not apply." *Huffman v. JP Morgan Chase Bank, NA*, No. CV-22-00903-PHX-JJT, 2023 WL 2691455 (D. Ariz. Mar. 29, 2023).

In the present case, Plaintiff attempts to characterize the factual basis of Defendants' Counterclaim as solely reliant on Plaintiff's prosecution of the California Action. (Doc. 14-1 at 9) ("[Plaintiff's] alleged fraudulent conduct stems solely from its act of filing lawsuits in California and Arizona courts against [Defendants]. [Defendants] do not allege any other conduct which constitutes fraudulent activity]."). If this were true, then any claims against Plaintiff based on their decision to file suit would be barred by Arizona's litigation privilege. However, throughout Defendants' Counterclaim and Response, they assert that "the Counterclaim stems from the existence and enforcement of [Plaintiff's] unlawful non-compete provisions." (Doc. 16 at 6); (*see also* Doc. 1 at 4) ("California Business & Professions Code section 16600.1 makes the inclusion of a noncompete agreement in an employment contract an act of unfair competition within the meaning of Business & Professions Code section 17200."). Plaintiff's alleged implementation of these non-competition agreements is prohibited conduct, not speech. Furthermore, these non-competition agreements allegedly existed long before Plaintiff brought litigation to enforce them. (Doc. 1 at 3). This allegation is a sufficient factual basis to state a claim as it does not derive from litigation. Therefore, the Court finds that Arizona's litigation privilege does

7

not bar Defendants' Counterclaim to the extent that it is based on this conduct.

However, to the extent that Defendants' Counterclaim seeks damages premised on Plaintiff's enforcement of these non-competition agreements, the Counterclaim is barred by Arizona's litigation privilege. As Plaintiff's enforcement was in the form of litigation, it is the exact type of speech protected by Arizona's litigation privilege. *See Green Acres Tr*, 688 P.2d at 621. Defendants' Counterclaim is not one for "wrongful use of a civil proceeding, malicious prosecution, [or] abuse of process" of Plaintiff's enforcement, and so none of the recognized exceptions of the privilege apply. *See Goldman*, 462 P.3d at 1033–34. Thus, to the extent that Defendants' Counterclaim is based speech tied to litigation initiated by Plaintiff, it is barred. *See Linder v. Brown & Herrick*, 943 P.2d 758, 766 (Ariz. Ct. App. 1997) (applying litigation privilege to fraud and IIED claims as these theories "fail to comprise recognized causes of action"). Therefore, Defendants' Counterclaim may only proceed under a theory that Plaintiff's implementation of non-competition agreements was a violation of California Business and Professions Code. *See California State Emps. Ass'n v. Bogart*, No. 2:14-CV-02494 JAM, 2015 WL 461646, at *4 (E.D. Cal. Feb. 3, 2015) (finding that it is "procedurally proper" to "dismiss the claim in part, to the extent that it relies on specific theories" as opposed to "strik[ing] individual allegations within the UCL claim. . . ").

**2. Extraterritorial Application of California's Business and Professions Code**

California law presumes that the legislature "did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (Cal. 1999). Unless the legislature explicitly indicates otherwise, "if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018); *see also Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter

or history." (internal quotation marks and citations omitted)).

In the present case, the California State Legislature a recently codified an update to Section 16600.5 of the California Business and Professions Code, which went into effect on January 1, 2024, after being passed as California Senate Bill 699. *See* Cal. Bus. & Prof. Code § 16600.5; (*see also* Doc. 16 at 7). In doing so, the following language was added to the Code "(b) An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California." *Id*. The Court finds this language to be wholly unambiguous in its intent to extend the application of this section of the California Business and Professions Code to outside of the state. This is sufficient to overcome the presumption against extraterritorial application. *See Sullivan*, 254 P.3d at 248 ("unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history."). As Plaintiff did not file a Reply brief, the Court can only guess as to how their cited cases dated prior to January 1, 2024, would affect this recent amendment. Therefore, the Court will not dismiss Defendants' Counterclaim based on its extraterritorial application.

## IV. CONCLUSION

In sum, both the Motion to Stay and Motion to Dismiss Counterclaim will be denied. The Court declines to exercise its discretion to apply the first-to-file rule because the alleged factual conduct differs between the California and Arizona Actions. The Court also finds that Arizona's litigation privilege does not bar Defendants' Counterclaim, as it is based on alleged conduct which is unrelated to speech connected to litigation. However, Defendants' Counterclaim may not proceed based on facts arising out of Plaintiff's attempted enforcement of non-competition agreements through litigation.

Accordingly,

**IT IS ORDERED** that New American Funding, LLC, et al.'s Motion to Stay (Doc. 13) is **denied**.

**IT IS FURTHER ORDERED** that FBC Mortgage, LLC's Motion to Dismiss

Counterclaim (Doc. 14) is **granted in part and denied in part** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that New American Funding, LLC, et al.'s Counterclaim is **dismissed without prejudice** insofar as it is based on a theory of improper enforcement through litigation. Defendants' Counterclaim may proceed under a theory improper implementation of non-competition agreements under the California Business and Professions Code.

Dated this 22nd day of April, 2024.

Honorable Steven P. Logan
United States District Judge